Kimberly W. WADHAMS, Appellant,

v.

Raymond K. PROCUNIER; Michael Norris, Appellees.

No. 84–6501.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1985.

Decided Sept. 6, 1985.

Daniel J. Glanz, Alexandria, Va., for appellant.

Peter H. Rudy, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., Guy W. Horsley, Jr., Asst. Atty. Gen., Richmond, Va., on brief) and David P. Durbin, Washington, D.C. (Barry R. Poretz, Jordan Coyne Savits & Lopata, Washington, D.C., on brief), for appellees.

Before HALL and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

In this action, based upon 42 U.S.C.A. § 1983, Wadhams, a former inmate in Virginia's prison system, sought compensatory and punitive damages for having been held seven days longer than he would have been if he had been given credit for seven days spent in a jail in Florida, before Virginia authorities obtained custody of him. The defendant, Procunier, is the Director of the Virginia Department of Corrections, while the defendant, Norris, is the Sheriff of the City of Alexandria who had certified his

sentence credit for the time Wadhams had spent in the Alexandria jail.

The district judge concluded that the Virginia Tort Claims Act provided an adequate remedy for the redress of whatever wrong Wadhams had suffered and dismissed the action under the doctrine of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

We affirm on alternative grounds. The claim is not one to which the federal Constitution lends its protection, and, in any event, there was no deprivation of due process since Virginia provided adequate post-deprivation remedies.

### I.

Wadhams was arrested on January 6, 1982 in Fort Walton Beach, Florida, pursuant to a Connecticut warrant. The Connecticut officials knew that there was also an outstanding Virginia warrant for Wadhams, and one of them called the police in the City of Alexandria. It was agreed between them that Virginia would pick up Wadhams first and would hold him for trial in Connecticut after Virginia had finished with him. After an evidentiary hearing, it was found that this understanding was reached on January 6, 1982 and communicated by Alexandria police to the authorities at Fort Walton Beach.

On the next day, January 7, 1982, Wadhams waived extradition, and, on January 13, 1982, he was picked up by Alexandria policemen and transferred to the Alexandria jail.

Sheriff Norris, the official in charge of the Alexandria jail, was not informed that Wadhams had spent seven days in the jail in Florida and no "jail time credit sheet" was received from the authorities in Fort Walton. Beach.

Wadhams was tried and convicted and, on May 27, 1982, sentenced to five years imprisonment with three years suspended for a 10-year probationary period. The trial judge, in his commitment order, directed that credit be given for time spent in jail awaiting trial.

Over two months elapsed between the imposition of sentence on May 27, 1982 and August 4, 1982 when Wadhams was transferred from the Alexandria jail to the Virginia corrections system. At the time of transfer, Sheriff Norris sent along his certificate for credit of jail time spent in Alexandria jail from January 13, to August 4. As indicated earlier, he had not been informed that Wadhams had been held in jail in Florida for seven days under the authority of a Virginia warrant. On the basis of these records, the Department of Corrections computed his parole release date to be November 30, 1982, with total service of less than 11 months.

As his release date was approaching, Wadhams obtained confirmation from the Fort Walton Beach, Florida police that he had been held in jail there from January 6 to January 13, 1982. A prison counselor forwarded that document on November 17, 1982 to the Assistant Director for Classification and Records with the request that Wadhams' release date be advanced from November 30 to November 23. Another prison counselor wrote to Wadhams on November 26 to inform him that the Office of Classification and Records had rejected his request because the Fort Walton Beach certificate did not indicate that he had been held there for those seven days pursuant to the authority of a Virginia warrant and because it had not been certified by the Sheriff of the City of Alexandria.

Wadhams was released on November 30 and was immediately transferred to Connecticut.

### II.

Wadhams claims that his "false imprisonment" for seven days was the result of the absence of proper procedures to ascertain and give credit for time spent in jail in another state pursuant to a Virginia warrant. The parties are now agreed, however, that the governing statute provided for credit for such jail time. The sentencing judge directed that credit for jail time be given. Sheriff Norris would have included the seven days in his certificate had

he been aware of it. After transmittal of his certificate on August 4, 1982, upon a showing that the Fort Walton Beach police had held him for seven days for Virginia, he could have amended his certificate, or the trial judge, himself, could have filed an amendatory commitment directing credit for those seven days.

■ This is not so much a case of a lack of procedures; it is simply a case in which a mistake was made. The initial mistake was that of the Alexandria police in not reporting to Sheriff Norris that Wadhams had been held for them in Fort Walton Beach for seven days. But that mistake would not have been fatal if Wadhams had acted sooner to obtain a correction and had obtained supporting papers showing that his detention in Florida was for Virginia.

While it thus appears that Wadhams was wrongly detained for a seven-day period between November 23 and November 30, 1982,[1] the Constitution of the United States does not protect one against such wrongs when the infliction of the wrong is the result of a mistake or inadvertence and not by virtue of a state's laws or practices, even though the actors be state officials acting pursuant to their official duties.

That was the explicit holding of the Supreme Court in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). There it appeared that one brother was mistakenly held for eight days in the belief that he was the other brother. The two brothers had identical driver's licenses except for the pictures, and it was not until the eighth day that there was a review of fingerprints and photographs which promptly convinced the police officials that the detained brother's claim of misidentification was true. There, as here, there was a claim that there was a deficiency in the procedures. Nevertheless, it was held that it was enough that the plaintiff had been detained pursuant to a warrant valid on its face and that the mistake was not a calculated one. Indeed, it is said that the named

defendant acted with reasonable promptness after he became aware of the plaintiff's claim of misidentification.

In this case the named defendants are no more to be faulted than was Sheriff Baker, and the decision of the Supreme Court in *Baker v. McCollan* is dispositive of the constitutional claim asserted in this case. That is not without some conceptual difficulty in light of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, in which the majority opinion discussed *Baker v. McCollan* at some length with apparent approval, and in light of cases holding that, in some circumstances, one's interest in freedom from personal injury is a constitutionally protected interest for which § 1983 may provide a remedy against a state official or employee. *See* the discussion in Part IV of *Kidd v. O'Neill*, (4th Cir. (83–6556) 1985), *but see Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) which held that negligence by a state employed physician treating a state prisoner would not give rise to § 1983 liability, though there may be a malpractice suit against the physician under state law. *See also Daniels v. Williams*, 748 F.2d 229 (4th Cir.1984) in which the majority of the *en banc* court held that there was no constitutional violation when a prisoner suffered injury when he tripped over a pillow and newspapers negligently left by a deputy sheriff upon a stairway. Freedom from false imprisonment by state officials seems to be even closer to the core of the Fifth Amendment, but, it is the kind of claim that should not clutter the dockets of federal courts, at least when state official defendants have acted without substantial culpability.

### III.

■ If Wadhams suffered any deprivation of his liberty interest, recovery in the federal court, nevertheless, would be foreclosed by the Supreme Court's holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct.

---

1. The defendants do not concede that that is so, except for the purposes of this appeal. They state that if the case were tried, they could

prove that the mandatory release date was later than November 30.

1908, 68 L.Ed.2d 420 (1981), for Virginia provides adequate tort remedies for post-deprivation compensation.

The mistake was clearly a random and unauthorized act. The committing judge intended Wadhams to receive all jail time credits to which he was entitled, and there is no suggestion that any state official intended to deprive him of credit to which he was known to be due. Wadhams' claim that he was due an additional credit of seven days, only partially supported, came at the eleventh hour, too late for a meaningful pre-deprivation hearing.

Effective on July 1, 1982, however, Virginia adopted a comprehensive Tort Claims Act, Sec. 8.01–195.1 et seq. Recovery in an action brought under that Tort Claims Act cannot exceed $25,000, but that cap is unlikely to occasion any embarrassment to this plaintiff even if he is successful in proving that he was detained for seven days longer than he should have been.

The initial mistake, that of the failure of the Alexandria policemen to inform the sheriff that Wadhams had spent seven days in jail in Florida because of the Virginia warrant, occurred before the effective date of the Act, but the only claims asserted are against the sheriff and the director of the department. The sheriff did not certify the jail time spent until after the effective date of the Act and the department's headquarters' refusal to advance the release date, because of the inadequate showing, did not occur until shortly before Wadhams' release, well after the effective date of the statute.

A claim under the Tort Claims Act is, of course, against the Commonwealth of Virginia. Additionally, Virginia's body of tort law provides remedies against any individual employee of the Commonwealth who may have wrongly caused any illegal detention of Wadhams. It is clear that Virginia intended that Wadhams receive credit for the Florida detention, if it was caused by the Virginia warrant. Any official responsible for denial of that credit to him was not exercising a discretionary function but was performing ministerial acts upon which he can base no claim of immunity. *Daniels v. Williams,* 748 F.2d 229 (4th Cir. *en banc* 1984), *Ausley v. Mitchell,* 748 F.2d 224 (4th Cir. *en banc* 1984).

### IV.

For the foregoing reasons, the judgment is affirmed.

AFFIRMED.