### Robb M. HARKSEN, Plaintiff,

v.

### S. GARRATT, et al., Defendants.

### No. Civ.A. 2:96CV412.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 15, 1998.

---

## MEMORANDUM OPINION
## AND ORDER

JACKSON, District Judge.

On May 5, 1997, Defendants Fleming, Terrangi, Garraghty and Garrett filed a joint motion to dismiss Plaintiff's complaint.[1] In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), Plaintiff was notified of his right to oppose the Defendants' motion and informed that failure to respond could result in an adverse judgment based on the Defendants' submissions. On July 14, 1997, the Court received from Plaintiff a document entitled "Motion to Strike" wherein Plaintiff requested that the Court deny the Defendants' motion and allow the case to proceed to trial. The Court construes Plaintiff's pleading as a response to the Defendants' motion to dismiss and responds accordingly.

On November 26, 1997, Defendant Williams filed a motion to dismiss.[2] Once again, Plaintiff was notified of his right to respond. On December 12, 1997, the Court received from Plaintiff a document entitled "Motion to Strike" wherein Plaintiff requested that the Defendant's motion be denied and the case allowed to proceed to trial. The Court interprets Plaintiff's motion as a response to the Defendant's motion to dismiss.

Accordingly, the matters are now ripe for judicial determination. For the following reasons, the Defendants' motions to dismiss are **GRANTED.**

---

1. Since that time, the Court's ruling on the motion has been held in abeyance pending proper service of all of the named Defendants.

2. Since that time, the Court's ruling on the motion has been held in abeyance pending proper service of all the named Defendants.

## I. PROCEDURAL HISTORY AND FACTS

On April 25, 1996, Plaintiff's initial complaint was conditionally filed. On May 29, 1996, pursuant to Court order, Plaintiff submitted a completed questionnaire which served as an amendment to Plaintiff's complaint. On October 7, 1996, Plaintiff requested the Court's permission to submit a second completed questionnaire which would correct erroneously named defendants, add certain defendants and add or correct allegations. On November 15, 1996, the Court granted Plaintiff's request and advised Plaintiff that both the first and second questionnaires would be filed as amendments to the initial complaint. On December 11, 1996, Plaintiff filed the second completed questionnaire and a motion to strike the first questionnaire. On January 6, 1997, the Court ordered the first questionnaire stricken and the second questionnaire filed as "the Complaint." [3]

At all times relevant to this action, Plaintiff was incarcerated at Greensville Correctional Center ("GCC") which is operated by the Virginia Department of Corrections ("VDOC"). Defendant Fleming was the Regional Administrator for the VDOC. Defendant Terrangi was the Deputy Warden of GCC. Defendant Garraghty was the Warden of GCC. Defendant Jones was a Correctional Officer at GCC. Defendants Garrett and Williams were Grievance Coordinators at GCC.

Plaintiff has alleged that violations of his civil rights occurred in four specific factual circumstances. The following facts are taken from Plaintiff's second completed questionnaire and accepted as true for the purpose of disposing of the pending motions.

### A. Stolen Property

On the evening of August 31, 1995, Plaintiff was released from his cell to take a shower. Corrections officers failed to close his cell, which remained open and unlocked. When Plaintiff returned from his shower, he found that his radio had been stolen. Plaintiff promptly filed both an informal complaint and a stolen property report. Over the course of a year, Plaintiff used both the informal complaint process and the official grievance process in attempts to obtain a remedy for his stolen property. Plaintiff's attempts, nonetheless, were unsuccessful. Many of Plaintiff's complaints went unanswered. Others were returned stating that Plaintiff needed to utilize another institutional procedure or resubmit paperwork. Ultimately, Plaintiff's allegation of theft was labeled unfounded, and his appeal went unanswered.

Based on these facts, Plaintiff claims that Defendants Garrett and Williams intentionally "used the grievance system to deprive him of his property and due process rights." He claims that Defendants Garraghty, Terrangi and Fleming have likewise deprived him of constitutional rights by either act or omission: either they (1) had some actual involvement in the failure to resolve his grievances or (2) were aware of the failures, but did not take corrective action.

### B. Disciplinary Segregation and Property Loss

On or about February 20, 1996, Plaintiff was placed on "strip cell status" by Correction Officer Mosely. All of Plaintiff's personal property and bedding were confiscated. When Plaintiff complained to Defendant Jones, he was told that the property would be returned when Defendant Jones felt like returning it. Although temperatures dropped to eighteen (18) degrees and Plaintiff was clothed only in a t-shirt and boxers, Defendant Jones continued Plaintiff's strip cell status for three (3) days. On the third day, Plaintiff was moved to another cell and given a mattress, but his personal property was not returned. The cell also lacked running water.

At the end of the seventh day, Defendant Jones returned Plaintiff's property. An alarm clock, cassette tape and legal documents were missing. Plaintiff complained to Defendant Jones who told him to speak with

---

**3.** The second questionnaire entirely replaced both the initial complaint and the first question- naire. (*See* Order Mar. 5, 1997.)

Correction Officer Mosely. The latter informed Plaintiff that the missing items were probably in the trash.

On March 9, 1996, Plaintiff filed a stolen property report and complained to the unit manager. Defendant Jones delivered the response to Plaintiff's complaint wherein Plaintiff was told to complete a stolen property report. On March 12, 1996, Plaintiff complained to Defendant Williams. On March 17, 1996, Plaintiff complained to Defendant Garraghty. The complaints were never answered.

Plaintiff claims that, by not responding to his complaints, Defendants Williams and Garraghty violated his property rights and his right to be free of cruel and unusual punishment.[4]

### C. Law Library Access

On May 9, 1996, Plaintiff requested permission to visit the law library. Plaintiff was on segregation status; thus, his request was denied pursuant to a policy prohibiting inmates who are on segregation status from physical access to the library. Plaintiff was advised, however, that he could make specific requests for materials which would then be provided to him in his cell. Plaintiff made a second request for information related to "collateral appellate procedures and civil rights," but indicated that he did not know the names of specific cases. In response to his request, Plaintiff received a copy of "Estelle v. Gambez [sic]" and a "1983 form." Plaintiff made additional requests for material. He received no response to his requests.

Subsequently, Plaintiff requested that he be "allowed to make photocopies of a civil action that he had to provide the court with." He was given a photocopy request form which indicated that "photocopies had to be approved by the Treatment program supervisor or the warden" and that "a charge of 15 cents per page would be deducted from his inmate account, HOWEVER, requests to copy inmate prepared suits or writs, or of

resource or reference materials will NOT be approved."Based on these facts, Plaintiff claims that institutional policies were "designed to deter and inhibit plaintiffs [sic] 14th amendment rights to access to the courts."

### D. New Jumpsuit: Magistrate Judge & Medical Attention Requests

On or about June 5, 1996, Plaintiff requested a new jumpsuit because his was wet. He was told that Defendant Jones had ordered that Plaintiff not be given a jumpsuit. Plaintiff kicked his cell door to gain Defendant Jones' attention. When Defendant Jones responded, Plaintiff complained and Defendant Jones responded by using force to subdue Plaintiff and by taking Plaintiff's personal property and mattress. After again complaining, Defendant Jones retaliated by locking Plaintiff's tray slot which was supposed to be left open due to the extreme summer heat. Three days later, Plaintiff refused his breakfast and complained to a corrections officer that the heat was unbearable and that he did not have basic hygiene materials. Defendant Jones was called to Plaintiff's cell. Upon hearing Plaintiff's complaints, Defendant Jones began to strike Plaintiff.

After the assault, Plaintiff requested medical attention. Defendant Jones denied those requests. Plaintiff filed two emergency grievances: one requesting to see a magistrate judge to file assault charges and another requesting to receive medical attention. Neither of the grievances was answered. Six hours later, Plaintiff submitted additional grievances which went unanswered. Subsequently, Plaintiff wrote a letter to Defendant Fleming advising him of the situation and of Plaintiff's desire to receive medical attention and to see a magistrate. Defendant Fleming responded that he had notified Defendant Garraghty of the matter. Plaintiff wrote Defendant Garraghty but received no response. Plaintiff also wrote to the Internal Affairs

---

4. Plaintiff also claims Defendant Jones violated his rights by subjecting him to cruel and unusual conditions of confinement, depriving him of his property and interfering with his due process rights. Additionally, Plaintiff claims that Correction Officer Mosely subjected him to cruel and unusual conditions of confinement and property deprivations. Those claims are not addressed herein.

Department for VDOC. His letter was not acknowledged.

Based on these facts, Plaintiff alleges that Defendant Fleming violated Plaintiff's Fourteenth Amendment rights by deliberately ignoring Defendant Jones' actions and denying Plaintiff access to a magistrate judge. Further, Plaintiff claims that Defendant Garraghty violated Plaintiff's rights by denying him access to a magistrate judge and denying him medical treatment.[5]

## II. LEGAL STANDARD

### A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions that fail to state a claim upon which relief can be granted. The Court may only rely upon allegations in the complaint and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery County Police Officers,* 762 F.2d 30, 31 (4th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). When considering a motion under Rule 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court must assume the facts in the plaintiff's complaint to be true. *See Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969). The motion should only be granted if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982) (same).

### B. Pro Se Pleadings

■ The following principles govern the Court's consideration of the sufficiency of Plaintiff's complaint. A *pro se* complaint involving civil rights issues is liberally construed. *Gordon v. Leeke,* 574 F.2d 1147,

1151 (4th Cir.1978). No matter how unartfully pleaded, a *pro se* complaint survives a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). A *pro se* complaint may be dismissed, however, where the complaint contains a detailed description of underlying facts which fail to state a viable claim. *Estelle v. Gamble,* 429 U.S. 97, 106–09, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Finally, where a *pro se* complaint contains potentially cognizable claims, a plaintiff should be allowed to particularize the claim. *Coleman v. Peyton,* 340 F.2d 603, 604 (4th Cir.1965).

## III. DISCUSSION

### A. Stolen Property

■ With respect to the stolen radio, Plaintiff's complaint is based on his dissatisfaction with the manner in which Defendants responded to his informal complaints and official grievances. Prisoners have no constitutionally protected right to "grievance procedures or access to any grievance procedure voluntarily established by a state." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994). Since Plaintiff has no right to access to the grievance procedure, the fact that Defendants failed, in Plaintiff's opinion, to adequately respond to his grievances does not rise to the level of being a constitutional violation. Under state law, torts claim procedures are available by which the Plaintiff may recover the value of the property. It is clear that the Commonwealth has made available a tort remedy that may adequately redress Plaintiff's loss and give him the process he is due. Accordingly, the motion to dismiss this claim is **GRANTED.**

### B. Disciplinary Segregation and Property Loss

■ Courts use the Eighth Amendment to scrutinize the treatment a prisoner re-

---

**5.** Additionally, Plaintiff claims that Defendant Jones violated his Eighth Amendment right to be free of cruel and unusual punishment by assaulting Plaintiff and not granting him medical treatment and his Fourteenth Amendment right to liberty by denying him a jumpsuit which is worn during exercise period. These claims are not addressed herein but will be addressed when the Court resolves Defendant Jones' motion for summary judgment.

ceives in prison and the conditions of confinement. To prove cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy a two-prong test that has both an objective and a subjective component. The first prong, which is an objective inquiry, asks whether the deprivation alleged is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The inmate must be denied "the minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298, 111 S.Ct. 2321, and the deprivation must violate contemporary notions of decency. *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The second prong, a subjective inquiry, requires the inmate to demonstrate that the prison officials acted at least with deliberate indifference toward his or her needs. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Wilson*, 501 U.S. at 302–303, 111 S.Ct. 2321. This subjective prong requires more than negligent conduct; deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 835–37, 114 S.Ct. 1970; *Whitley*, 475 U.S. at 319, 106 S.Ct. 1078. In addition to these two elements, a plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged cruel and unusual prison conditions. *Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir.), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

 The due process rights of prisoners are not absolute and are subject to reasonable limitation or retraction in light of an institution's legitimate security concerns. *Bell v. Wolfish*, 441 U.S. 520, 554, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Even intentional deprivation of a prisoner's property by state employees acting within the scope of their employment are not actionable under § 1983 when adequate post-deprivation state remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

 Plaintiff claims that the conditions to which he was subjected were cruel and unusual; however, he neither alleges that he actually suffered any injury to his physical or mental health nor produces evidence of serious or significant emotional or physical injury. Instead, Plaintiff asserts that because the conditions were so harsh, he does not have to show an injury. Contrary to Plaintiff's assertion, the Fourth Circuit requires that Plaintiff allege a serious injury. *Strickler* at 1380–8; *See also Norman v. Taylor*, 25 F.3d 1259 (4th Cir.1994) (en banc) (finding that generally, no Eighth Amendment excessive force claim exists where an injury sustained by a plaintiff is *de minimis*). Accordingly, Defendants' motions to dismiss this claim are **GRANTED**.

 Plaintiff's claim regarding the loss of his alarm clock, cassette tape and legal documents likewise fails. Even random, unauthorized deprivations of prisoners' personal property by state officials do not offend due process if the constitutional requisites are satisfied by adequate post-deprivation state remedies. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Virginia Tort Claims Act and Virginia tort law provide adequate remedies for Plaintiff's deprivation of his personal property. *See Wadhams v. Procunier*, 772 F.2d 75 (4th Cir.1985). Accordingly, Defendants' motions to dismiss this claim are **GRANTED**.

### C. Law Library Access

It has long been accepted that the fundamental constitutional right of access to the courts requires prison authorities to provide prisoners with adequate law libraries or adequate assistance from persons trained in law to prosecute both post-conviction proceedings and civil rights actions. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). Recently, the United States Supreme Court stated that actual injury is required to state a claim for denial of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180–82, 135 L.Ed.2d 606 (1996). *See also Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir.1993)

(stating that it is a "basic requirement that [a prisoner] show specific harm or prejudice from allegedly denied access.") Such injury will be shown when an inmate can "demonstrate that a nonfrivolous legal claim has been frustrated or was being impeded." *Lewis*, 116 S.Ct. at 2181. The Court in *Lewis* disclaimed any expansions of the right of access to the court which suggested "that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court." *Id.* at 2181 (emphasis in original). The right of access to the courts does not require that every conceivable legal material be available to an inmate. The court also looked at the effect that lockdown status can have on prisoner litigation and noted that even where delays in receiving legal material or legal assistance are as long as sixteen (16) days, when they are "the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury." *Id.* at 2185.

Applying *Lewis* to the facts of this case, the Court finds that Plaintiff has failed to state a claim because he has not alleged that he was impeded in the pursuit of a nonfrivolous claim. *Id.* at 2181. Accordingly, the motion to dismiss this claim is **GRANTED.**

### D. New Jumpsuit: Magistrate Judge & Medical Attention Requests

In order to state a claim under § 1983, Plaintiff must allege facts to show (1) that the conduct of which he complains was committed by a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *see, e.g.,* *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). "There is no clearly established right to transportation to a court for the purpose of filing criminal charges." *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir.1990). Since Plaintiff had no federal right to be transported to see a magistrate judge to file a claim against Defendant Jones, it necessarily follows that Plaintiff cannot base a § 1983 claim upon the failure of Defendants Fleming and Garraghty to do so.

With respect to Plaintiff's claim that he was denied the right to medical treatment, the Court finds that Plaintiff fails to allege that he sustained an injury requiring medical treatment. Accordingly, Plaintiff's claim must be dismissed. *See Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir.), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993). Defendants' motion to dismiss this claim is **GRANTED.**

### IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** the motions to dismiss filed by Defendants Williams, Fleming, Terrangi, Garrett, and Garraghty.

The parties are ADVISED that, under Rule 54(a) and (b) of the Federal Rules of Civil Procedure, this Opinion and Order does not constitute a final order for purposes of appeal. The Court's determination will not become final until all claims against all parties have been resolved.

The Clerk is DIRECTED to send a copy of this order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED.**