**Robb M. HARKSEN, Plaintiff,**

v.

**S. GARRATT, et al., Defendants.**

No. Civ.A. 2:96cv412.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 4, 1998.

Robb M. Harksen, Keen Mountain, VA, pro se.

Mark R. Davis, Office of Atty. General, Richmond, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter comes before the Court on the motion for summary judgement, pursuant to Federal Rule of Civil Procedure 56, filed by Defendant Terrance D. Jones. The Court has reviewed Defendant's motion, his memorandum in support of the motion, Plaintiff's "motion to dismiss" Defendant's motion for summary judgment and Plaintiff's memorandum in support of the motion. Defendant Jones did not file a reply. Accordingly, this matter is now ripe for judicial determination. For the following reasons, the Defendant's motion is **DENIED in part** and **GRANTED in part.**

### I. PROCEDURAL HISTORY

Plaintiff instituted this pro se action against the defendants pursuant to 42 U.S.C. § 1983 by complaint conditionally filed on April 25, 1996. On May 29, 1996, pursuant to Court order, Plaintiff submitted a completed questionnaire which served as an amendment to Plaintiff's complaint. On October 7, 1996, Plaintiff requested the Court's permission to submit a second completed questionnaire which would correct erroneously named defendants, add certain defendants and modify allegations. On November 15, 1996, the Court granted Plaintiff's request and advised Plaintiff that both the first and second questionnaires would be filed as amendments to the initial complaint. On December 11, 1996, Plaintiff filed the second completed questionnaire and a motion to strike the first questionnaire. On January 6, 1997, the Court ordered the first questionnaire stricken and the second questionnaire filed as "the Complaint."

Defendant Terrance D. Jones filed a motion for summary judgement on May 12, 1998. On June 2, 1998, the Court granted Plaintiff's May 20, 1998 motion to extend time to respond to Defendant's motion for summary judgment. On June 3, 1998, Plaintiff filed a motion and memorandum requesting that the Court dismiss Defendant's motion for summary judgment.

## II. FACTUAL BACKGROUND[1]

At all times relevant to this action, Plaintiff was incarcerated at the Greensville Correctional Center ("GCC"), which is operated by the Virginia Department of Corrections ("VDOC"). Defendant Jones was a supervising officer assigned to work in Housing Unit # 8, a special housing unit for prisoners at the GCC.

The following facts are undisputed. On January 30, 1996, Plaintiff Robb Harksen was transferred to the Special Housing Unit ("SHU"). He was placed in the SHU after review of a disciplinary charge. On February 20, 1997, the Institutional Classification Committee ("ICC") met and recommended Plaintiff's continued assignment to the SHU.

In the complaint and the memorandum in opposition to Defendant's motion for summary judgment, Plaintiff made the following factual allegations specific to the present defendant: (1) that Defendant physically assaulted Plaintiff on several occasions; (2) that Plaintiff's conditions of incarceration amounted to Eighth Amendment violations; (3) that Defendant deprived Plaintiff of his property; and, (4) that Defendant interfered with Plaintiff's due process rights. Moreover, the defendant's acts lay the foundation for Plaintiff's claim that former Defendant Fleming[2] violated Plaintiff's Fourteenth Amendment rights by deliberately ignoring Defendant Jones' acts of using force to subdue the Plaintiff, taking his personal property, locking Plaintiff's tray slot and denying Plaintiff's requests for medical attention.

## III. STANDARD OF REVIEW

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court reviews the record as a whole and in the light most favorable to the nonmoving party, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court's role is a limited one: "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* 477 U.S. at 249, 106 S.Ct. 2505. A genuine issue for trial is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* 477 U.S. at 250, 106 S.Ct. 2505. The issue of fact must be material as well as genuine. The inquiry thus focuses ultimately on "whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* 477 U.S. at 252, 106 S.Ct. 2505. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [because then] there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The role of a prisoner attempting to establish liability for civil rights violations is also well defined. Once a party has properly filed evidence supporting the motion for summary judgment pursuant to Federal Rule of

1. A great deal of extraneous information has been asserted by the parties regarding the background to this action. The Court will endeavor to recount only the most basic of background information.

2. The Court dismissed Fleming from the action in the October 15, 1998 Memorandum Opinion and Order.

Civil Procedure 56(c), the burden shifts to the nonmoving party to set forth specific facts showing genuine issues for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 817 (4th Cir.1995). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. A prisoner must show that the defendant (1) personally violated a specific right under federal law, (2) implemented an official policy which resulted in a constitutional violation; or (3) tacitly authorized or demonstrated deliberate indifference to the unlawful conduct of subordinates. *See Gaston v. Taylor,* 918 F.2d 25, 29 (1990), *vacated on other grounds on reh'g,* 946 F.2d 340 (4th Cir.1991); *Slakan v. Porter,* 737 F.2d 368, 372–73 (4th Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *Fisher v. Washington Metro. Area Transit Auth.,* 690 F.2d 1133, 1142–43 (4th Cir.1982). In so doing, a prisoner must bear in mind that the law does not convert every potentially tortious act into a deprivation of constitutional rights simply because the alleged tortfeasor happens to be a government actor. *See Wagner v. Wheeler,* 13 F.3d 86, 92 (4th Cir.1993).

## IV. DISCUSSION

### A. Cruel & Unusual Punishment

Plaintiff's claims of cruel and unusual punishment concern: (1) physical assaults by the Defendant and (2) the conditions of Plaintiff's incarceration.

### 1. The Physical Assaults

Throughout the course of this action, in both sworn and unsworn documents, Plaintiff claims that Defendant Jones physically assaulted him. Plaintiff submitted copies of affidavits by two inmates, Larry Newell and Arthur Trammel, who allege that they saw Defendant Jones assaulting Plaintiff. By affidavit, Arthur Trammel asserts that Defendant Jones assaulted Plaintiff because Plaintiff called Jones a "racist and a bigot." Trammel additionally states that he witnessed Jones and another officer dragging Plaintiff across the cell block by his handcuffs, kicking the plaintiff as they proceeded and never giving him the opportunity to get to his feet. Larry Newell states in his affidavit that he saw Defendant Jones drag Plaintiff into the cell block, up a flight of stairs and then shove him into a cell.

Defendant Jones, in his affidavit in support of the motion for summary judgment, claims that no assaults occurred. The defendant alleges that on June 5, 1996, after observing Plaintiff set a towel on fire, he instructed Sergeant Harrison to bring a video camera to record Harksen's removal from the SHU cell. After other officers assembled to provide assistance, Defendant entered the cell, physically restrained Harksen and then placed Harksen on strip cell status. Jones specifically denies any physical assault on the Plaintiff and alleges that since Plaintiff did not forcibly resist being restrained, "only minimal force was necessary." The video tape of the cell extraction now cannot be found.

Jones also denies later physically assaulting the Plaintiff and has no recollection of being involved in any physical confrontations with inmate Harksen after the June 5, 1996 removal of the Plaintiff from his cell. Defendant asserts that had there been a physical altercation, reports of such an incident would exist. Jones asserts the same argument with respect to his requesting that Plaintiff put his arm back inside of the tray slot and then closing Plaintiff's tray slot on June 8, 1996.

Refuting the claim that no force was used to close the tray slot, Affiant Newell states that he heard Jones threatening to break Plaintiff's arm if he did not allow the tray slot to be closed, saw Jones strike Plaintiff's arm several times with his fist and then later saw evidence of injury: "the inside of his arm was black and dark purple from his armpit to almost the middle of his forearm. His arm was swollen really large."

Defendant Williams corroborates Defendant Jones' denials in her affidavit by stating that she has no documentation which sug-

gests that Defendant assaulted Plaintiff. Moreover, Williams asserts that had a physical altercation taken place, officers involved would have been required to complete a report explaining the nature of the incident.

As to the existence or seriousness of any injury received, Nurse Hamlin, after examining Plaintiff's medical records, states that a physician's assistant saw Plaintiff on June 21, 1996 for athlete's foot and the assistant's documents do not reveal or allude to other health concerns or injuries. The nurse has no records to indicate that Plaintiff was ever examined again until May 1997. Hamlin also asserts that nurses make daily rounds, the prisoners inform nurses at those times of any problems they may be experiencing and the nurses then record all complaints as a matter of procedure. Hamlin has no record of an injury resulting from physical assault with respect to the plaintiff.

Plaintiff agrees that the nurses make the rounds, but argues that he informed a nurse of his injury resulting from the June 8, 1996 incident. Affiant Newell affirms Plaintiff's allegation by stating that a nursed stopped, merely glanced at Plaintiff's injury and left. Newell also states that he transported to the floor officer an emergency grievance, a copy of which is in the record, which was signed by Officer Karen Person.

■ In Plaintiff's memorandum in support of his motion to dismiss Defendant's motion for summary judgment, Plaintiff alleges that Defendant's physical assaults violate the Eighth Amendment. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

■ Courts use the Eighth Amendment to scrutinize the treatment a prisoner receives in prison and to examine the conditions of confinement. To prove cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy a two-prong test that has both an objective and a subjective component. The first prong, which is an objective inquiry, asks whether the deprivation alleged is "sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The inmate must be denied "the minimal civilized measure of life's necessities," *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321, and the deprivation must violate contemporary notions of decency. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The second prong, a subjective inquiry, requires the inmate to demonstrate that the prison officials acted at least with deliberate indifference toward his or her needs. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970; *Wilson,* 501 U.S. at 302–303, 111 S.Ct. 2321. This subjective prong requires more than negligent conduct; deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 835–37, 114 S.Ct. 1970; *Whitley,* 475 U.S. at 319, 106 S.Ct. 1078.

■ In addition to these two elements, a plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged cruel and unusual prison conditions. *Strickler v. Waters,* 989 F.2d 1375, 1380–81 (4th Cir.), *cert. denied,* 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993). When a Plaintiff fails to allege that he sustained an injury requiring medical treatment his claim must be dismissed. *See Strickler v. Waters,* 989 F.2d 1375, 1380–81 (4th Cir.), *cert. denied,* 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993). Additionally, something more than a *de minimis* injury is required. *See Hudson,* 503 U.S. at 9–10, 112 S.Ct. 995; *see also Norman v. Taylor,* 25 F.3d 1259 (4th Cir.1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where an injury sustained by a plaintiff is *de minimis* ). Claims of malpractice or disagreement over medical treatment are not actionable under section 1983. *Daniels v. Williams,* 474 U.S. 327, 332 (1986).

■ The Court finds that summary judgment is appropriate on Plaintiff's claim of physical assault. Plaintiff fails to allege any

facts that are material to an Eighth Amendment analysis. Plaintiff's records demonstrate that he submitted an emergency grievance request and an affiant attests to seeing Plaintiff's swollen and bruised arm, but Plaintiff fails to allege that Defendant's acts in the course of removing him from the cell and in closing the tray slot resulted in injuries which required medical treatment or that were more than de minimis. Plaintiff does not allege as a material fact that Defendant Jones' conduct was the source of the bruising and swelling that Affiant Newell observed. Moreover, while there is a genuine issue as to whether the assaults occurred, Defendant has not placed the magnitude of any injury received in dispute.[3] While Harksen alleges that the nurse merely glanced at his injury, did not return and then his emergency grievance form never received response, the examination by the nurse suggests that the nurse determined that Plaintiff was in no apparent medical distress. In any case, a claim about the act or inaction of the attending nurse is one of malpractice or disagreement over the medical treatment needed. As such, the claim is not actionable under § 1983. Accordingly, Defendant Jones' motion for summary judgment with respect to physical assaults is **GRANTED.**

### 2. The Conditions of Incarceration

Plaintiff's response to Jones' motion for summary judgment specifically alleges that the condition of cells in which he was confined violates the Eighth Amendment. He provides additional facts and affidavits in support of the claim. Plaintiff also makes the case that there was an official policy or custom designed to deprive Plaintiff, and inmates similarly in strip cell status, of constitutional rights.[4]

Plaintiff and Defendant contest whether Defendant had knowledge that Plaintiff was on strip cell status around February 20, 1997. Jones has no "specific recollection of Harksen's claim that he was placed on a strip cell status on or around the dates of February 20, 1996, to February 27, 1996." Jones states that had Plaintiff been placed on strip cell status, there would have been documentation to confirm placement and removal and that in any event, Plaintiff would have only been placed on such status in accordance with appropriate policies.

In response, Plaintiff draws the Court's attention to a logbook page and asserts that "the document clearly has been altered to hide" the fact that he was placed on strip cell status. Upon examination, the Court finds that Defendant's submission of the same log book page clearly states that at 16:06 "Inmate R. Harksen 226455 was placed on fifteen minutes observation."

▇ Plaintiff also directs the Court's attention to an Inmate Complaint Form signed by Defendant Jones, with the signature dated March 28, 1996, on which Plaintiff clearly states that he was placed on strip cell status on February 20, 1996 and then goes on to report missing property. The Court finds that the defendant's signature at the bottom of the Complaint Form does not signify that Defendant adopted all statements therein as true and correct. The date of the signature would at most suggest that Defendant was aware of the status one month later, more than two years ago. Defendant does not argue that Plaintiff was never placed on strip cell and the length of or precise dates that Plaintiff's strip cell status is not central to

---

3. While a material issue is whether Plaintiff's injuries were more than de minimis, Plaintiff relies on Affiant Newell's description to characterize the injuries and suggests that the injury was serious enough to file an emergency grievance. The Defendant, by stating that there are no records of injury, has not placed in dispute the magnitude of any injuries received or whether Plaintiff received serious or significant physical or emotional injury. The Defendant has not conceded that there was any injury at all. Jones' claims do not approach analysis of whether such injury was de minimis.

4. Affiant Larry Newell states that "I noticed [Harksen's] cell had an extremely bad odor emitting from it, due to the fact his toilet water had been turned off for several days. There was a large amount of feces [sic] and urine in the toilet. These conditions that Mr. Harksen lived in was commonplace in SHU–8. 'Strip cell' was an act of retribution used by the officers frequently for any reason, which could be as simple as abusive language. During the months that I lived in SHU8 I witnessed several other inmates living in this same fashion."

Plaintiff's claims of cruel and unusual punishment. Strip cell status itself is not unconstitutional, rather, the conditions within the status in this instance may raise constitutional issues. Therefore, the issue is immaterial and not worthy of further discussion.

A central point of contention is the condition of the cells in which Plaintiff was placed. The defendant states that the log book entries reflect that the housing unit temperature was between 72 and 75 degrees. Plaintiff counters that the outside temperature was 18 degrees, that the windows were cracked and that the internal heat was not working properly. Affiant Newell states that Plaintiff was clothed only in tee shirt and boxers, but does not address the internal temperature. Newell does, however, state that the bunk in Plaintiff's cell had no mattress, Plaintiff had no toiletries of any kind and that the cell was in a "deplorable and unsanitary condition" with human excrement having aggregated because the water had been turned off for several days.[5] Newell additionally alleges that placement in the cell was a form of retribution exacted by officers for reasons as simple as having been the target of abusive language.

■ In order to meet the constitutional requisites for segregated confinement not violative of the Eighth Amendment, the "quarters used for segregation shall be well ventilated, adequately lighted, appropriately heated and maintained in a sanitary condition at all times." *Sweet v. South Carolina Department of Corrections,* 529 F.2d 854, 860 (4th Cir.1975). Further, while segregated confinement conditions may be "harsh and unpleasant," the conditions must meet "basic sanitation and nutrition" requirements. *Id.* "Inadequate lighting, ventilation, heating, cleaning, bedding, nutrition, medical care, or opportunities to wash are all factors which bear on a finding of cruel and unusual punishment. No single condition has ever by itself been held cruel and unusual punishment; however, the cumulative effect of several conditions will bring solitary confinement within the prohibition of the eighth

amendment." *Id. (quoting* Note, Prisoner's Constitutional Rights: Segregated Confinement as Cruel and Unusual Punishment, 1972 Wash.U.L.Q. 347,350–1).

■ Whether Plaintiff's cell was adequately heated, had bedding and was maintained in a sanitary condition is material. As Defendant contested Plaintiff's claims, there is also a genuine issue as to these facts. Under these circumstances, Defendant is not entitled to summary judgment. Accordingly, Defendant Jones' motion for summary judgment with respect to Plaintiff's conditions of incarceration is **DENIED.**

### B. Deprivation of Property & Due Process

Defendant Jones filed an affidavit by Williams which states that the latter has been unable to locate documents which affirm that in the third week of February 1996 property was removed from Harksen's cell and that Plaintiff was denied basic hygiene items. Williams states that had items been removed, security staff would be required to fill out appropriate forms and that no such documents currently exist to suggest the removal of Plaintiff's possessions. Plaintiff counters this assertion by proffer of documents suggesting that hygiene materials were taken away.

Section 1 of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The due process clause has both a substantive and a procedural component. As a matter of procedural due process, the Court is concerned with reviewing the decision-making process to determine whether an individual's "life, liberty, or property" has been taken without "due process." U.S. Const. Amend XIV. The Court may evaluate either the fairness of the procedure or the decision in an individual case. Rotunda & Nowak, *supra* § 14.6 at 355. As a matter of substantive due process, the Court is concerned with the

---

**5.** Defendant asserts that forms must be filed to request that an inmate's toilet and sink be turned

off and that no forms suggest that this occurred.

power of the government to restrict an individual's freedom of action. Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure, 2d § 14.6 at 356.

Nonetheless, the due process rights of prisoners are not absolute and are subject to reasonable limitation or retraction in light of an institution's legitimate security concerns. *Bell v. Wolfish,* 441 U.S. 520, 554, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Even random, unauthorized deprivations of prisoners' personal property by state officials do not offend due process if the constitutional requisites are satisfied by adequate post-deprivation state remedies. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

The Virginia Tort Claims Act and Virginia tort law provide adequate remedies for Plaintiff's deprivation of his personal property. *See Wadhams v. Procunier,* 772 F.2d 75 (4th Cir.1985). Therefore, the removal of the property is not material. Accordingly, Defendant's motion for summary judgment with respect to the deprivations of property is **GRANTED.**

Plaintiff also alleges that Defendant interfered with his rights to Due Process [6] in other ways. His allegation pertains to Defendant's treatment of Plaintiff's property and Defendant's handling of Plaintiff's grievance forms. Grievance Coordinator Watson reviewed the grievance inquiry list for Harksen "and can find absolutely no indication that Harksen filed any grievances about the incidences alleged in this lawsuit," except those concerning property reimbursement and protective custody. Defendant argues that Plaintiff has not exhausted the administrative remedies.

In making the case that he was denied due process, Plaintiff appears to construe "grievance forms" more broadly than the defendant. Plaintiff directs the Court's attention: (1) to a note from Institutional Investigator F.W. Meritt evincing that Plaintiff had made complaint about the assaults and (2) to a letter from Rufus J. Fleming, regional Director, advising that Fleming was aware of the assault allegations and had forwarded a letter to the GCC's Warden.

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust his administrative remedies before he may proceed with a 42 U.S.C. § 1983 claim in federal court. *Wright v. Morris,* 111 F.3d 414, 418 (6th Cir.1997). With the passage of the Prison Litigation Reform Act ("PLRA") on April 26, 1996, Congress expressly mandated exhaustion before bringing suit in federal court. 42 U.S.C. § 1997e (1997); *Garrett v. Hawk,* 127 F.3d 1263 (10th Cir.1997). Prior to the enactment of the PLRA, however, a district court had discretion to require a prisoner to exhaust administrative remedies before bringing his claim in court. 42 U.S.C. § 1997e (1994); *Rocky v. Vittorie,* 813 F.2d 734 (5th Cir.1987); *See Wright v. Morris,* 111 F.3d 414, 423 (6th Cir.1997) (holding that 42 U.S.C. § 1997e does not apply to claims pending at the time of passage of the PLRA).

Plaintiff's conditional complaint was, in fact, filed before April 26, 1996, the effective date of the PLRA.[7] Plaintiff conditionally filed his complaint on April 25, 1996. On the other hand, the Court's January 6, 1997 Order directs that the second questionnaire filed on December 11, 1996 be filed as "the Complaint."

Irrespective of whether Plaintiff exhausted all grievance procedures, prisoners have no constitutionally protected right to "grievance procedures or access to any grievance procedure voluntarily established by a state." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994). Whether Plaintiff exhausted the

---

6. Plaintiff's complaint simply alleges a violation of "Federal Constitutional Due Process." The complaint does not explicitly state whether Plaintiff is referring to substantive or procedural due process. Accordingly, the Court will address both types of due process claims.

7. The Fourth Circuit has not ruled on this specific issue. The Court, however, finds the reasoning of the Sixth Circuit both sound and persuasive. Further, the Fourth Circuit discussed this Sixth Circuit case approvingly in its determination that § 804(b) of the PLRA does not apply retroactively. *Church v. Attorney General of Com. Of Va.,* 125 F.3d 210 (4th Cir.1997).

procedures and whether Defendant responded appropriately is therefore immaterial. Accordingly, Defendant Jones' motion for summary judgment with respect to the due process claims is **DENIED.**

### V. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** in part and **DENIES in part** the Motion for Summary Judgment filed by Defendant Terence Jones.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Practice 28, it is **ORDERED** that this action be referred to a United States Magistrate Judge for a Report and Recommendation on Plaintiff's claim against Defendant Jones pertaining to Plaintiff's conditions of incarceration. The United States Magistrate Judge may hold whatever hearings are deemed necessary and such hearings may be held at the place of Plaintiff's incarceration.

The parties are ADVISED that this Opinion and Order does not constitute a final order for purposes of appeal. The Court's determination is not final because all claims against all parties have not been resolved.

The Clerk is DIRECTED to send a copy of this order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED.**