# CIRCUIT COURT OF STAFFORD COUNTY

Paula K. Johnson

v.

Commonwealth of Virginia et al.

February 9, 2000

Case No. (Law) 99000191

BY JUDGE JAMES W. HALEY, JR.

On June 29, 1995, at the University of Virginia Health Science Center ("UVHSC"), T. W. Rogers gave birth to a female infant she named Rebecca G. Chittum ("Rebecca"). On June 30, 1995, at the same institution, Paula K. Johnson ("PKJ") gave birth to a female infant she named Callie M. Conley ("Callie"). By misadventure, the identification of the two infants was switched. As a result, on July 1, 1995, PKJ, discharged on that date, took Rebecca home from UVHSC, believing her to be Callie, her natural child. T. W. Rogers, likewise, took Callie home, believing her to be Rebecca. Rebecca

has remained in the continuous custody of PKJ. Callie remained in the continuous custody of T. W. Rogers and Rebecca's father, Kevin Chittum, until their accidental death on July 4, 1998. On July 2, 1998, PKJ learned, as the result of definitive scientific testing, that Rebecca was not her natural child. Sometime during July 1998, PKJ learned of Callie's location and that child is now the subject of litigation as to her future custody.

On May 24, 1999, PKJ filed a motion for judgment in the Circuit Court of Stafford County against the Commonwealth of Virginia, UVHSC, the Rector and Visitors of the University of Virginia ("the Rector"), and various individual physicians including Thomas A. Massaro, M.D., Robert W. Cantrell, M.D., and Robert J. Boyle, M.D., and various individual non-physicians ("individual defendants"). It is specifically noted that neither Rebecca nor Callie are parties to this action.

The motion for judgment contained a thirteen paragraph "General Statement" of facts which was incorporated by reference into four separate counts:

I. Negligence as to all defendants;

II. Constructive fraud as to all defendants;

III. Violation of federal constitutional rights pursuant to 42 U.S.C. 1893, as to the individual defendants;[1] and

IV. A claim of intentional fraud against Thomas A. Massaro, M.D., and Robert W. Cantrell, M.D.

Defendants have filed a number of motions and pleas, and this opinion addresses only those motions and pleas which the parties have agreed are matured for decision. Because of the likelihood this matter will be appealed, the court will rule on all these motions, even though a ruling on one or more might be dispositive at the trial level. As the same will be often referred to herein, the Virginia Medical Malpractice Act, Va. Code § 8.01-581.1 *et seq.*, will be designated "the Act."

UVHSC and the Rector (and Visitors) of the University of Virginia have moved the court to dismiss them as parties defendant on all counts, arguing that they are "arms of the Commonwealth." That motion is granted, these defendants being subsumed within Defendant, Commonwealth of Virginia. *Commonwealth of Va. Dept. of Transp. v. B. J. Adams, Inc.*, 227 Va. 548,

---

[1]  The plaintiff originally included the Commonwealth, UVHSC, and the Rector as defendants in this Count but on brief concedes that "The Plaintiff admits that the Commonwealth and it agencies should not be included as defendants in Count III." (Plaintiff's Brief filed Dec. 6, 1999, p. 11.)

550-51, 317 S.E.2d 788, 789 (1988); *Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973).

All defendants have demurred to Count II, the claim of constructive fraud. Pursuant to Code § 8.01-273, a demurrer is to be sustained if a pleading "does not state a cause of action ... or fails to state facts upon which the relief demanded can be granted." *Board of Supervisors v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1980); *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 410 S.E.2d 652 (1991); *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125 (2000).

A claim of fraud must be pleaded with specificity. *Koch v. Seventh Street Realty Corp.*, 205 Va. 65, 135 S.E.2d 131 (1964); *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 241 S.E.2d 778 (1978). The pleadings in the instant case merely recite the same factual allegations as contained in Count I, negligence, and label them constructive fraud. Accordingly, they fail for lack of specificity.

Secondly, as the "General Statement" in the motion for judgment makes clear, the plaintiff's claim is one of negligence, of medical malpractice. In *St. George v. Pariser*, 253 Va. 329, 335, 484 S.E.2d 888, 891 (1997), dealing with the misdiagnosis of a cancerous mole, the plaintiff filed her action based upon both negligence and constructive fraud, the latter pleading that the true condition of the mole had been misrepresented. The Supreme Court affirmed the action of the trial court in sustaining a demurrer to the fraud count, noting:

> St. George also asserts that she adequately pled a cause of action for constructive fraud .... The facts alleged describe only the negligent performance of the initial biopsy, not negligent misrepresentation.

Finally, parties should not be permitted to turn what is in actuality a claim of medical malpractice, or a negligent breach of contract, into "an actionable claim for fraud." *Richmond Met. Auth. v. McDevitt Street Bovis, Inc.*, 356 Va. 533, 539, 507 S.E.2d 344, 347-48 (1998).

For these reasons, the demurrer to Count II alleging constructive fraud is sustained and Count II is dismissed.[2]

Count I sets forth various particulars of alleged negligence against all defendants, all occurring subsequent to the birth of the child, that is, the allegations all deal with the switch of the children's identity. There are no allegations of negligence while any child was *in utero*.

---

[2] See further on this point below.

All Defendants have demurred to Count I on the grounds the pleadings do not set out a cause of action for medical malpractice as to PKJ, arguing that the allegations of negligence occurred subsequent to birth, that PKJ suffered no "physical injury" as a result of the negligence alleged, and that the damages she seeks are not recoverable under the facts of this case.

A "tortfeasor who causes harm to an unborn child is subject to liability to the child, or the child's estate, for the harm to the child, if the child is born alive." *Kalafut v. Gruver*, 239 Va. 278, 283-84 (1990). And at the moment of live birth, a child becomes a "patient" under the Act, and is entitled to a separate malpractice cap under the Act. *Bulala v. Boyd*, 239 Va. 218, 229, 389 S.E.2d 670, 675 (1990). If negligence causes injury to a fetus and the consequent stillbirth of the child, "the injury to an unborn child constitutes injury to the mother ...." entitling her to damages. *Modaber v. Kelley,* 232 Va. 60, 66, 348 S.E.2d 233 (1990).[3] But as noted above, both children were born alive and no child is a party to these proceedings.

A woman admitted to the care of a health care provider for the birth of a child is "clearly ... a patient" of the provider under the Act, as well as under common law principles. *Bulala, supra,* 239 Va. at 229, 389 S.E.2d at 675; *Fairfax Hosp. Systems, Inc. v. McCarty,* 244 Va. 28, 419 S.E.2d 621 (1992). While it is true that "there can be no actionable negligence unless there is a legal duty, a violation of the duty, and a consequent injury ...." *Chesapeake & Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988) (quoting *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951)), a health care provider owes a duty of reasonable care to a patient, a duty set forth by Code § 8.01-581.20 ("that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth ...." unless a local standard is more appropriate than a Commonwealth-wide one). See also, *Black v. Bladergroen,* 258 Va. 438, 443, 521 S.E.2d 168, 171 (1999). Defendants' reliance on *Gray v. INOVA Health Care Systems*, 257 Va. 597, 514 S.E.2d 355 (1999), in support of this portion of their demurrer, is misplaced. In *Gray*, the plaintiff was not a patient and accordingly was owed no duty of care by the health care provider.

For the purpose of evaluating this portion of the demurrer, this court finds that PKJ's presence in UVHSC for the purposes of giving birth to a child and the subsequent misidentification of Rebecca and Callie, as set forth in the

---

[3]  But those damages, while including emotional distress, do not include those generally associated with a wrongful death action, *e.g.,* loss of society, income, assistance, etc.

pleadings, suffices to set forth a duty owed to the plaintiff and its apparent breach. In so doing, the court relies upon *Naccash v. Burger*, 233 Va. 406, 290 S.E.2d 825 (1982). There, blood was drawn from the father, Joseph Burger, alone to determine if a child *in utero* could be afflicted with Tay-Sachs disease.[4] A number was assigned to the blood vial which was supposed to correspond to Joseph Burger's name. The sample was sent to a lab which reported that Joseph was not a carrier. The child was born with Tay-Sachs, with consequent multiple physical problems leading to its death. Subsequent testing revealed that both parents were Tay-Sachs carriers. Testimony revealed that the health care provider had mislabeled the blood samples and those of another individual, who was not a Tay-Sachs carrier, and those samples were reported as normal and as Joseph Burger's. The court held that the Burgers "were owed a duty of care in the handling of the blood withdrawn for the tests" and that "the evidence establishes that, as the result of negligent mishandling of Mr. Burger's blood, his sample was switched with the sample withdrawn from another man on the same date ...." *Naccash, supra*, 233 Va. at 414, 290 S.E.2d at 829. There is no legal difference, this court concludes, between the misidentification of the Burger blood samples and the misidentification of Callie and Rebecca.

Under both Counts I and II, PKJ seeks $12 million damages which she specifies as loss of companionship and services of Callie, financial expenses of raising Rebecca, loss of privacy, legal expenses, and mental anguish, mental pain, and mental suffering. The court concludes the last three items of damages are properly styled emotional distress and will use that term for the same herein.

As noted above, the third pinion of the defendants' demurrer is based upon the proposition the damages sought by PKJ are not recoverable in this action. Specifically, they maintain one may not recover damages for emotional distress in the absence of physical injury to the claimant.

With respect to physical injury, in *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991), the court summarized its "four pronged approach" to emotional damages set forth in the seminal decision of *Womack v. Eldredge*, 215 Va. 338, 210 S.E.2d 145 (1974), as follows:

> We stated that emotional distress resulting from *a non-tactile* tort may
> be compensated if the plaintiff alleges and proves by clear and

---

[4] If one parent is a carrier of Tay-Sachs, there is a 25% chance the unborn child will be. If both parents are carriers, the unborn child is certain to be afflicted. Here the hospital drew two samples from one parent alone.

convincing evidence that the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful distress are causally connected; and the distress is severe.

(Emphasis supplied.) See also *Hughes v. Moore*, 214 Va. 27, 197 S.E.2d 214 (1973); *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 297 S.E.2d 647 (1982).

Neither Count I or II of the motion for judgment contain allegations sufficient to bring this cause within the ambit of the *Womack* approach.[5] As a result, on brief, Plaintiff maintains that the tort alleged is in fact *tactile* because "the Defendants gave (PKJ) the wrong child for her to nurse and comfort, and this physical contact occurred on many occasions during the plaintiff's hospitalization." (Plaintiff's brief delivered Dec. 6, 1999, p. 6.) The pleadings do not contain any allegations remotely equivalent to that portion of the brief quoted above.

Most recently in *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125 (2000), a patient plaintiff was sexually assaulted by a fellow patient and filed a motion for judgment alleging, *inter alia*, negligent infliction of emotional distress. The defendants demurred on the ground that the plaintiff failed to allege a physical injury. The trial court sustained the demurrer. The Supreme Court, relying upon *Hughes v. Moore*, 214 Va. 27, 197 S.E.2d 214 (1973), stated:

Delk's conclusional allegation that she incurred "severe mental, emotional and physical trauma" is not sufficient to support a cause of action for negligent infliction of emotional distress. Delk failed to plead with specificity that she incurred a physical injury which was the natural result of fright or shock caused by the defendants' alleged negligence. Delk fails to provide any description of her physical injury in her amended motion.

*Delk*, at 138.

In the present case, PKJ has not alleged any physical injury to herself; nor, of course, has she given the specifics of such injury. Finally, as all Defendants argue, damages for emotional distress to parents are "derivative" of damages negligently inflicted upon their child. *Bulala v. Boyd, supra*, 239 Va. at 230, 389 S.E.2d at 676; *Speet v. Bacaj*, 237 Va. 290, 298, 377 S.E.2d 397, 401

---

[5]  Physical injury to a fetus subsequently stillborn constitutes injury to the mother sufficient to support a claim of emotional distress by the mother. *Modaber v. Kelley*, 232 Va. at 66-67, 348 S.E.2d at 237.

(1989); as are damages for medical expenses claimed by the parents. *Norfolk S. Ry. v. Fincham*, 213 Va. 122, 128, 189 S.E.2d 380, 384 (1972); see also, *Mahony v. Becker*, 246 Va. 209, 435 S.E.2d 139 (1993). As noted above, no child is a party to this action.

In light of the foregoing, the demurrer is sustained, with leave to amend, and the claim for damages for emotional distress is stricken.

Defendants maintain that the claims set forth in Counts I and II are all essentially one of medical malpractice and ask the court to determine that the total damages incurred by the plaintiff under both counts, singly or in combination, are accordingly subject to the recovery cap of $1 million set forth in the Act, and, further, to strike from Plaintiff's *ad damnum* any sum in excess thereof.

"A litigant who asserts a claim against a health care provider must comply with the provisions of the Virginia Medical Malpractice Act, Code §§ 8.01-581.1 *et seq.*" *Turner v. Wexler*, 244 Va. 124, 126, 418 S.E.2d 886, 887 (1992) (the "Act"). There is no doubt that the defendants are health care providers.

In *Hagan v. Antonio*, 240 Va. 347, 350, 397 S.E.2d 810, 811 (1990), the court stated that:

> According to [the Act], the term "malpractice" is defined as "any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient."

In defining the scope of the Act, the Supreme Court of Virginia has held within its purview an alleged breach of contract and/or battery by performing a type of surgery without permission, *Glisson v. Loxley*, 235 Va. 62, 69, 366 S.E.2d 68, 72 (1988), an alleged assault and battery and intentional infliction of emotional distress occurring during a breast examination, *Hagan, supra*, an alleged breach of contract by the disclosure of confidential medical information, *Pierce v. Caday*, 244 Va. 285, 291, 422 S.E.2d 371, 373 (1992), and a claim of "ordinary, traditional negligence" when a patient cut his foot on a protruding screw in a whirlpool bath, *Gonzalez v. Fairfax Hosp. Sys.*, 239 Va. 307, 310, 389 S.E.2d 458, 460 (1990). Damages claimed under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, are likewise subject to the Virginia Medical Malpractice Act. *Lee by Wetzel*, 778 F. Supp. 900, 908 (W.D. Va. 1991).

The Act covers all conduct that is "an inseparable part of the health care being rendered ...." *Hagan, supra*, 240 Va. at 352, 397 S.E.2d at 812, or a "component of medical treatment," *Pierce, supra*, 244 Va. at 291, 422 S.E.2d

at 373. *Pulliam v. Coastal Emergency Services*, 257 Va. 1, 509 S.E.2d 307 (1999). The Act applies regardless of the disparate theories by which medical malpractice may be described. *Power v. Alexandria Physicians Group*, 887 F. Supp. 845 (E.D. Va. 1995), *aff'd* 91 F.3d 132 (4th Cir. 1996), *cert. den.* 519 U.S. 1010, 117 S. Ct. 514, 136 L. Ed. 2d 403 (1996); *Bulala v. Boyd*, 239 Va. 218, 228, 389 S.E.2d 670, 676 (1995), quoted with approval in *Fairfax Hosp. Sys. v. Nevitt*, 249 Va. 591, 598, 457 S.E.2d 10, 14 (1990).

In light of the foregoing, the court concludes that the Act is applicable to Counts I and II of the motion for judgment. Accordingly, any damages claimed by PKJ in excess of the statutory cap are unrecoverable. In addition, however, defendants ask the court to strike sums in excess of that cap from the *ad damnum*. Such relief is premature. In *Etheridge v. Medical Center Hosps.*, 237 Va. 87, 96, 376 S.E.2d 525, 529 (1989), the court stated that: "Code § 8.01-581.15 ... does not apply until after a jury has completed its assigned function in the judicial process." Likewise, in *Supinger v. Stakes*, 255 Va. 198, 205, 495 S.E.2d 813, 818 (1998), the court reiterated that "the trial court applies the statutory remedy only after the jury has fulfilled it fact finding function ...." Accordingly, the court declines to limit the *ad damnum* on the grounds that it is in excess of the Act's recovery cap.[6]

The individual defendants have moved the court to dismiss Count III, which, as noted above, alleges a violation of 42 U.S.C. § 1983 on two grounds.

First, the individual defendants conclude that each are sued in their official capacities and accordingly are not amenable to suit for alleged violations of § 1983. The "General Statement" referred to above, and incorporated within Count III by reference, alleges that:

3. At all times relevant to this action, the non-physician defendant individuals were acting as agents and employees of the Center, within the scope of their employment and authority.

4. At all times relevant to this action, the physician defendants were employees, or agents, or contractors of the Center, and the physician defendants associated and offered services through the Center. The Center is responsible and liable for the acts of the physician defendants, who at all times were acting within the scope of their employment or agency.

---

[6] Defendants also assert the cap on damages set forth in the Virginia Tort Claims Act, Code §§ 8.01-195.1 *et seq.*, but that matter is reserved for further argument, as are immunity and qualified immunity issues.

The court concurs with the conclusion of the individual defendants that they are sued in their "official" capacities. On brief, plaintiff maintains that "where the motion for judgment is silent about the capacity in which individuals are sued .... the court should assume that the defendants are not being sued in their official capacities." (Plaintiff's Memorandum, delivered Dec. 6, 1999, p. 10.) The pleadings are not silent as to the capacities of the individual defendants, as quoted above, and even if the pleadings were silent, a court cannot include "assumptions" in its analysis of a pleading.

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 58, 109 S. Ct. 2304 (1989), the Supreme Court stated that "neither a State nor its officials acting in their official capacity are 'persons' under 1983." In that capacity, they are not proper party defendants to a § 1983 action. Thus, the demurrer to Count III is sustained on the first ground raised.

The individual defendants also demurred to Count III on the grounds that the pleadings are inadequate to set forth a § 1983 claim. They correctly point out the Count III differs only from Counts I and II in that the word "intentionally" is placed before the same phrases before which was placed the word "negligently" or "fraudulently" respectively, *e.g.*, "intentionally did not note in the medical records ...." The court further notes that no individual defendant is identified by name in Count III. The plaintiff does, however, allege the "deliberate indifference" of the individual defendants, a point to be discussed *infra*.

In *Estelle v. Gamble*, 429 U.S. 97, 105-06, 50 L. Ed. 2d 251, 260-61, 97 S. Ct. 285, 292 (1976), the Supreme Court stated that with respect to 42 U.S.C. § 1983:

> In order to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs ....

See also, *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992).

Deliberate indifference may be shown when a prison official:

> knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a serious risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811, 825 (1994); see also,

*Hathaway v. Coughlin,* 99 F.3d 550 (2d Cir. 1996); *Holley v. Deal,* 948 F. Supp. 711, 718 (M.D. Tenn. 1996).

Courts have noted that "indifference is apathy or unconcern ..." about a condition of which prison staff is aware. *Rollgerut v. Cape Girardeau County,* 924 F.2d 794, 797 (8th Cir. 1991); see also *Hill v. Nicodemus,* 979 F.2d 987, 979 (4th Cir. 1982). Finally, the injury must occur as the result of a deliberate decision made by prison staff. *Daniels v. Williams,* 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986). See also, *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir. 1996).

The Supreme Court of Virginia has recently addressed the sufficiency of a claim pursuant to 42 U.S.C. § 1983. In *School Board, City of Portsmouth v. Colander,* 258 Va. 417, 422-23, 519 S.E.2d 374, 377 (1999), the court noted it was applying "federal jurisprudence ..." cited *Commissioners of Bryan County v. Brown,* 520 U.S. 397 (1997), and held as a matter of law "the school board did not cause the violation of the plaintiff's § 1983 rights." In so doing, the court stated:

> Thus, although a governmental body may have been negligent in regard to the plaintiff's federal rights, in order to show that it "caused" the violation of those rights, "[a] plaintiff must demonstrate that [the governmental] decision reflects *deliberate* indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." 520 U.S. at 411. And, the required " 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of this action."

520 U.S. at 410.

Unlike PKJ, a prisoner has no choice as to where or by whom he will be afforded, or not afforded, medical care. Nonetheless, and setting aside the prisoner observation, a cause of action under 42 U.S.C. § 1983 requires a decision demonstrating deliberate indifference to known conditions which result in harm to the plaintiff. The pleadings in this case do not state that defendants made a conscious decision to switch the children's identity and demonstrated indifference, unconcern, or apathy to the effect of such a switch.

A plaintiff may not turn a cause of action for medical malpractice into a violation of 42 U.S.C. § 1983 by "artful" pleading. *Daniels v. Williams, supra.* See also, *Harken v. Garrett,* 29 F. Supp. 2d 272 (E.D. Va. 1998); *Estelle v. Gamble, supra; Wadhams v. Procunier,* 772 F.2d 75 (4th Cir. 1985).

For these reasons, the demurrer to Count III is sustained and Count III is dismissed.

Count IV of the motion for judgment alleges that Cantrell and Massaro committed actual fraud in knowingly making false statements. The only allegation as to whom these statements were made is that they were made "to the general public." Both defendants have demurred to the count.

In *Jefferson Standard Life Ins. Co. v. Hedrick*, 181 Va. 824, 833, 27 S.E.2d 198, 202 (1943), the court quoted from *Mears v. Accomac Banking Co.*, 160 Va. 311, 321, 168 S.E 740, 743 (1933), in setting forth the elements of actual fraud. These elements require that "the representation is meant to be acted upon; and *he to whom the representation is made ... acts upon it.*" (Emphasis supplied.) In 37 C.J.S., *Fraud*, § 46, n. 75, p. 235, the commentator states: "One has no right to rely on representations unless they were directly or indirectly made to him." In *Unlimited Screw Products, Inc. v. Malin*, 781 F. Supp. 1121, 1127 (E.D. Va. 1991), the court noted that: "One of the elements of a misrepresentation claim is that the party asserting the claim be the party to whom false representations were made." See also, 8B M.J., *Fraud and Deceit*, § 51, n. 7, p. 409. Count IV contains no allegation that any representation was made to PKJ.

In addition, for a false representation to be actionable, the representation "must relate to a matter material to *the transaction involved*; and materiality can only be defined in the context of *the transaction between the parties.*" 37 C.J.S., *Fraud*, § 26, nn. 85-87, p. 206 (emphasis supplied). See also, *Barnett v. Barnett*, 83 Va. 504, 2 S.E. 733 (1887). In short, a misrepresentation and a transaction are necessarily intertwined. Count IV contains no allegation concerning any transaction whatsoever between PKJ and either Massaro or Cantrell.

For the foregoing reasons, the demurrer to Count IV is sustained and Count IV is dismissed.

All defendants have asserted a plea of the statute of limitation contained in Code § 8.01-243 and as refined in Code § 8.01-230.

In *Scarpa v. Melzig*, 237 Va. 509, 512, 379 S.E.2d 307, 309 (1989) (Justice Lacy dissenting, joined by Chief Justice Carrico), the plaintiff became pregnant approximately four years after a 1990 negligent surgical procedure failed to render her sterile. Defendant asserted a statute of limitations defense. The court sustained that defense, holding that the plaintiff's cause of action accrued when she was discharged after the surgery of 1990. The court stated:

> The applicable statute provides .... that "every action for personal injuries, whatever the theory of recovery ... shall be brought within

two years after the cause of action accrues." Code § 8.01-243(A). Accrual of the cause of action is governed by Code § 8.01-230 which provides ... that a "cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person ... and not when the resulting damage is discovered ...." We construed the word "injury" as used in Code § 8.01-230 "to mean positive physical or mental hurt to the claimant." *Locke v. Johns-Manville Corp.*, 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981).

The accrual of a cause of action for medical malpractice is extended until "the improper course of ... treatment for a particular malady terminated." *Fenton v. Danaceau*, 220 Va. 1, 4, 255 S.E.2d 349, 350 (1979); *Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594 (1979). A defendant asserting a statute of limitations defense has the burden of proving the date on which the injury occurred. *Lo v. Burke*, 249 Va. 311, 316, 455 S.E.2d 9, 12 (1995). "In determining when the plaintiff's 'injury' was sustained, the crucial question ... when the date of the wrongful act possibly does not coincide with the date of the resulting harm to the plaintiff, is: When was the plaintiff hurt?" *Renner v. Stafford*, 245 Va. 351, 354, 429 S.E.2d 218, 220 (1993).

In *Nunnally v. Artis*, 254 Va. 247, 354, 492 S.E.2d 126, 128 (1997), (Justice Compton dissenting, joined by Chief Justice Carrico and Justice Stevenson), the Supreme Court overruled *Scarpa* and held that in wrongful conception cases, a cause of action for medical malpractice accrues under Code § 8.01-230 on the date of conception rather than upon the date the health care provider performed the negligent sterilization procedure. The majority noted that "Nunnally's injury, the wrongful conception, did not exist at the time of defendant's alleged wrongful act — the negligent sterilization procedure."

Nonetheless the majority in *Nunnally* made clear that their decision did not constitute the adoption of a "discovery rule" in Virginia:

We find no merit in defendant's argument that our holding today constitutes a "discovery rule." We adhere to the holding, expressed in *Virginia Military Institute v. King*, 217 Va. 751, 760, 232 S.E.2d 895, 900 (1977), that adoption of a discovery rule, which causes the running of the statute of limitations only when an injury is discovered or should have been discovered in the exercise of reasonable diligence, must be accomplished by the General Assembly.

254 Va. at 253, 492 S.E.2d at 129. See also, *Suffolk County Sch. Bd. v. Conrad Brothers, Inc.*, 255 Va. 171, 174-75, 495 S.E.2d 470, 472 (1998).

Plaintiff's reliance upon the provisions of Code § 8.01-243(C)(2) in defense is misplaced. That subsection does constitute a "discovery rule" for "fraud, concealment, or intentional misrepresentation preventing discovery." But this subsection applies only to actual fraud, not constructive fraud.

Basically, the difference between active and constructive fraud is that in the former a misrepresentation is knowingly made and in the latter the misrepresentation is negligently made. See 8B, M.J., *Fraud*, § 3, n. 18, pp. 350-51. *Lumbermen's Underwriting v. Dave's Cabinets, Inc.*, 258 Va. 377, 381, 520 S.E.2d 362, 365 (1999). In *Hawks v. DeHart*, 206 Va. 810, 146 S.E.2d 187 (1966), a doctor negligently left a surgical needle in the plaintiff during an operation. Suit was filed more than two years subsequent to the operation, and the statute of limitations was raised. In attempting to avoid the effect of the statute, the plaintiff alleged that the doctor "knowingly ... concealed ... from the plaintiff the fact of the presence of such needle in her neck," thereby seeking the protection of a tolling statute like Code § 8.01-243(C)(2). The court found no evidence supporting the pleading and sustained the plea of the statute of limitations. In so doing, the court set forth the nature of such active fraud as would justify tolling, by quoting from *Housing Auth. v. Laburnum Corp.*, 195 Va. 827, 840, 80 S.E.2d 574, 582 (1954):

> Constructive fraud is not such as will toll the running of the statute of limitations. The character of fraud necessary to toll the statute must be of a variety involving moral turpitude. A defendant must intend to conceal the discovery of the cause of action by trick or artifice ... in order for the exception to apply.

206 Va. at 814, 146 S.E.2d at 190.[7]

The plaintiff's pleading in Count II is one of constructive fraud, and contains no allegations legally equivalent to those necessary to establish actual fraud, as set forth above. As such, the tolling provisions of Code § 8.01-243(C)(2) are not applicable.

The misidentification of the children occurred before PKJ left UVHSC on July 1, 1995. On that date, she took home a child not her own, her "injury" occurred, and her cause of action came into existence. Thus, on July 1, 1995, the present cause of action accrued pursuant to Code § 8.01-30, and the time

---

[7] The General Assembly has since adopted a "discovery rule" for malpractice in cases where "a foreign object ... [is] ... left in a patient's body ...." Code § 8.01-243(C)(1).

within which a cause of action had to be filed expired on July 2, 1997, pursuant to Code § 8.01-243(A). The present action was filed on May 24, 1999, and, accordingly, Counts I and II are barred by the statute of limitations. PKJ discovered the misidentification of the children in July 1998 and asks the court to apply a "discovery rule" under the circumstances of this case. The court cannot do so, such a matter being within the province of the General Assembly, not a court.[8]

In summary:

(1) UVHSC and the Rector and Visitors are dismissed as party defendants;

(2) The demurrer to Count I is sustained, with leave to amend;

(3) The demurrer to Count II is sustained and Count II is dismissed;

(4) The demurrer to Count III is sustained and Count III is dismissed;

(5) The demurrer to Count IV is sustained and Count IV is dismissed;

(6) The medical malpractice cap set forth in the Act is held applicable to both Counts I and II;

(7) The claim for emotional damages under both Counts I and II is stricken; and

(8) The plea of the statute of limitations as to Counts I and II is sustained.

---

[8] Code § 8.01-243 is tolled as to minors, Code § 8.01-243.1, and prisoners, § 8.01-243.2.