# COURT OF APPEALS OF VIRGINIA

## Record No. 0045-25-1

G.H., BY JANET RANCE,
HIS GUARDIAN AND NEXT FRIEND
v.
TANIA SOTOMAYOR, ET AL.

Present: Judges Athey, Friedman and Callins

Argued at Williamsburg, Virginia

Opinion Issued April 21, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Afshin Farashahi, Judge

Kevin E. Martingayle (Jerrell R. Johnson; Bischoff Martingayle, P.C., on briefs), for appellant.

Melissa Y. York (Jeremy D. Capps; Brian P. Ettari; Harman, Claytor, Corrigan & Wellman, on brief), for appellees.

### MEMORANDUM OPINION BY
### JUDGE DOMINIQUE A. CALLINS

G.H., by his guardian and next friend Janet Rance, appeals the circuit court's judgment

sustaining Tania Sotomayor, Sean F. Barnes, Chris Sprouse, and Euodias Falcon Knight, III's

(collectively, the Employees) demurrer to his second amended complaint (SAC). He argues the

circuit court erred in holding that his claims for gross negligence and a violation of 42 U.S.C.

§ 1983 were legally insufficient. Finding no error, we affirm the circuit court's judgment.

### BACKGROUND

In the 2019-20 school year, the Employees were officers of the Virginia Beach School

Board. Sotomayor was the Director of Compliance and Special Education Services, providing

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

"appropriate information, guidance and instruction" on the transportation of students with disabilities. Barnes was the Director of Transportation and was responsible for "all facets of transportation" of students in schools under the Board's purview. Sprouse was the Supervisor of Training and was responsible for providing "training to new bus drivers and bus driver assistants." And Knight was the Transportation Area Supervisor in charge of meeting the needs of students with disabilities during transit.

The Employees had discretion to assign bus driver assistants to ride with children with disabilities based on their assessment of the children's "needs, disabilities and behavioral challenges." Together, they were responsible for providing bus drivers and bus driver assistants with (1) appropriate training and supervision and (2) information about the children in their care. They were also responsible for ensuring children with disabilities being transported received "appropriate care, supervision and treatment."

That year, G.H. was assigned to attend Plan Bee Academy, a school under the purview of the Board that "provides educational services to certain special needs students." At the start of the year, G.H. made the Academy and the Employees aware that he was diagnosed with attention-deficit hyperactivity disorder, disruptive mood dysregulation disorder, unspecified anxiety disorder, adjustment disorder, specific learning disorder, post-traumatic stress disorder, and various behavioral problems. G.H. was "known to be extremely vulnerable and fragile, physically and mentally." Based on his conditions, the Employees provided G.H. with an individualized education program, including the provision of a bus driver assistant, Adela Lucia Avila, to care for him while in transit.

Although the Employees were aware of G.H.'s conditions, they did not share this information with Avila or G.H.'s bus driver. Avila did not receive training on addressing the behavioral and emotional needs of G.H. In fact, Avila did not receive any information about

- 2 -

G.H.'s specific conditions and the "emotional and physical challenges, risks and vulnerabilities" created by those conditions. Even in the absence of an official policy requiring the sharing of such information, the Employees admitted that the Board has the responsibility to inform relevant stakeholders of the needs of students with disabilities to ensure their safety. To this end, Knight received a "Special Needs Transportation Request Form" containing "specific information about the challenges and needs of specific special needs children," including G.H. But this form was never shared with G.H.'s bus driver or Avila.

One day that fall, G.H. was riding the bus with Avila. G.H. was one of "many" students with disabilities riding the bus, and the Employees knew these students "struggle[d] with behavioral and emotional outbursts." As a result of these "outbursts," these students required "a special and heightened degree of care and supervision as a general matter." During the drive, G.H. began "misbehaving or acting unruly in some fashion." To "control and restrain" him, Avila bit G.H. and struck him on the head.

G.H. initially sued Avila.[1] He alleged that he suffered "physical and emotional damages" because of Avila's actions. Four years following the incident, however, he amended his complaint to name the Employees as defendants, purporting to state claims for gross negligence and a violation of 42 U.S.C. § 1983. The circuit court sustained the Employees' demurrer to the amended complaint but granted leave to amend on G.H.'s motion. In doing so, the circuit court accepted as properly filed G.H.'s SAC, contemporaneously filed with his motion.

The Employees demurred to the SAC. After a hearing, the circuit court sustained the Employees' demurrer with prejudice. This appeal followed.

---

[1] Prior to noting his appeal, G.H. nonsuited his action against Avila as a matter of right.

ANALYSIS

G.H. argues that the circuit court erred in dismissing his claims, contending he pleaded facts sufficient to establish gross negligence and a deprivation of his Fourteenth Amendment rights. Because we hold that Avila's actions were not reasonably foreseeable, we disagree.

We review de novo a circuit court's judgment sustaining a demurrer. *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 527 (2023). Because a "demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof," *Peed v. Va. Dep't of Transp.*, 72 Va. App. 686, 692 (2021) (quoting *Reston Hosp. Ctr., LLC v. Remley*, 59 Va. App. 96, 109 (2011)), we do "not evaluate the merits of the allegations, but only whether the factual allegations sufficiently plead a cause of action," *Eubank v. Thomas*, 300 Va. 201, 206 (2021). Sustaining a demurrer is disfavored since doing so "'short circuit[s]' the legal process thereby depriving a litigant of his day in court and depriving [appellate courts] of an opportunity to review a thoroughly developed record on appeal." *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 253 Va. 93, 95 (1997) (collecting cases).

Pleading an action for negligence requires allegations "that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012). In general, an alleged tortfeasor has "no duty to warn or protect against acts of criminal assault by third parties." *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135 (2018). But, in exceptional cases, our Supreme Court has recognized a duty to protect against harm from third-party criminal acts when a special relationship between the alleged tortfeasor and the claimant exists, or where the tortfeasor assumes the duty. *Id.* at 136. This duty, however, "only exists when the [alleged tortfeasor] could have foreseen the need 'to take affirmative action to protect [the claimant] from

harm.'" *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 620 (2019) (quoting *Burns v. Gagnon*, 283 Va. 657, 669 (2012)).

Meanwhile, 42 U.S.C. § 1983 permits civil recovery for deprivations of "rights, privileges, or immunities secured by the Constitution and laws" attributable to any person acting "under color of [law]." The United States Supreme Court has interpreted 42 U.S.C. § 1983 to preclude vicarious liability based on respondeat superior, holding that liability only attaches to tortfeasors who "subject, or cause to be subjected," another to a deprivation of rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-93 (1978). Based on this interpretation, the Court later held that liability may be attributed to a municipality where a failure to train (1) shares a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," and (2) evidences deliberate indifference "to the rights of [the municipality's] inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 385, 389 (1989).

Extrapolating, the United States Court of Appeals of the Fourth Circuit has held that a public official may be liable for the § 1983 violations of their subordinates if three elements are satisfied:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Deliberate indifference is a "stringent standard of fault, requiring proof that" a supervisor "disregarded a known or obvious consequence of his action." *Sch. Bd. of City of Portsmouth v. Colander*, 258 Va. 417, 423 (1999) (quoting *Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)) (discussing the deliberate indifference standard in the § 1983 municipal liability context); *see Koon v. North Carolina*, 50

F.4th 398, 406 (4th Cir. 2022) ("Deliberate indifference is, at bottom, an actual-notice standard.").

Taking G.H.'s allegations as true, Avila's actions were not reasonably foreseeable such that liability for gross negligence could attach or the Employees could have "disregarded a known or obvious consequence of [her] action[s]." *Colander*, 258 Va. at 423 (quoting *Brown*, 520 U.S. at 410). G.H. asserted that the Employees were grossly negligent and violated his Fourteenth Amendment rights because Avila was not properly trained and the Employees failed to share information pertaining to G.H.'s specific conditions with Avila or the bus driver. But the SAC is devoid of allegations suggesting that Avila had a history of violent criminal behavior or child abuse. Absent allegations of this kind, Avila's conduct in striking and biting G.H. could not have been reasonably foreseeable. *See A.H.*, 297 Va. at 618 ("[U]nder 'ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen.'" (quoting *Terry*, 296 Va. at 135)). Since Avila's actions were not reasonably foreseeable, the Employees were under no duty of care to protect G.H. from Avila.[2] *Id.* at 620. Likewise, since the Employees were not aware of any history of violent acts by Avila, they had no reason to know that Avila would respond to G.H.'s misbehavior in this manner. When the Employees assigned Avila to be G.H.'s bus driver assistant, they did not "disregard[] a known or obvious consequence" of doing so. *Colander*, 258 Va. at 423 (quoting *Brown*, 520 U.S. at 410). Without

---

[2] We are mindful that the crux of the parties' arguments as to gross negligence focuses on whether the Employees were in a special relationship with G.H. such that they were required to protect G.H. from Avila. These arguments are novel, insofar as our Supreme Court has never recognized a principal-student relationship since it "has no history—deep-rooted or otherwise—in the common law." *Burns*, 283 Va. at 670-71. We are obligated, however, to decide cases on the best and narrowest grounds. *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023). Because we affirm the circuit court's judgment on the fact-specific basis of the foreseeability of Avila's actions, we decline to make a "broad pronouncement on [the] open legal question" of whether a special relationship exists between school officials and students with disabilities. *See Butcher v. Commonwealth*, 298 Va. 392, 397 (2020).

"actual notice" that Avila would assault G.H. in this manner, the Employees were not deliberately indifferent to G.H.'s Fourteenth Amendment rights. *See Koon*, 50 F.4th at 406.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed*.